IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES GARRETT et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:06-CV-4137-NKL |
| | ) | |
| GEORGE MARTIN ALBRIGHT, JR., | ) | |
| PRO LOGISTICS, INC. et al., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Reconsideration [Doc. # 274] of this Court's Order [Doc. # 254] granting summary judgment to Defendant CenTra, Inc. The Plaintiffs' motion is granted and this Court's Order [Doc. # 254] is vacated.

**I.     Background**

Plaintiffs bring this action against Defendants Central Transport, Inc., GLS Leaseco, Logistics Insights, Logistics Services and Pro Logistics, Inc., to recover damages for personal injuries and wrongful death resulting from a semi-truck collision occurring on I-70 on June 1, 2006. George Albright Jr. ("Albright"), was driving under the authority of Pro Logistics at the time of the accident. Plaintiffs allege that the collision was caused in part by Defendants' failure to hire, supervise and train safe drivers and/or safely monitor and service their motor carrier units. CenTra, Inc. ("CenTra"), is

the parent company of Central Transport, GLS Leasco, Logistics Insights, Logistics Services and Pro Logistics. CenTra is a holding and investment company comprised of approximately 50 subsidiaries including Central Transport and Pro Logistics. (Harned Dep. 8).[1] At the time of the collision, CenTra directly owned 100% of the shares of Central Transport, Inc., and Pro Logistics. CenTra formed Pro Logistics because "it does a particular type of motor freight operation and it has to have various licenses and authorities to perform that operation." (Harned Dep. 17). At the time of the collision, Central Transport provided administrative and safety services to Pro Logistics, without a written agreement, including monitoring which of Pro Logistics' drivers violated applicable motor carrier safety regulations. (Golec Dep. 45).

Previously, Plaintiffs alleged that the corporate veil between CenTra and Pro Logistics should be pierced on the basis that 1) Pro Logistics was undercapitalized and 2) that Pro Logistics breached its contract with GLS Leaseco to purchase liability insurance in the amount of one million dollars per person, rather than per occurrence. On August 9, 2007, this Court determined under Missouri corporate law and the Eighth Circuit's

---

[1] There has been considerable shifting of corporate names and locations. Testimony has conflicted, for example, as to when certain CenTra subsidiaries changed name or structure. Central Transport, Inc.'s Vice-President, Thomas Christ, stated that Pro Logistics was a subsidiary of Logistics Insight Corporation, while Joseph Golec, Pro Logistics' Vice-President of Pperations and a former employee of Central Transport, stated that the parent company of Pro Logistics, Inc., was LINC Logistics. (Christ Dep. 16); (Golec Dep. 11). At the time of the collision, CenTra was the direct parent company owning 100% of the shares of Pro Logistics and 100% of the shares of Central Transport. After the collision, CenTra formed a wholly-owned subsidiary, LINC Logistics, which in turn wholly owned Pro Logistics; Central Transport, Inc., reorganized and became Central Transport International, Inc., a wholly-owned subsidiary of CenTra, Inc.; Central Transport , Inc., became a wholly owned subsidiary of Central Transport International, Inc.

decision in *Radaszewski v. Telecom*, 981 F.2d 305, 308 (8th Cir. 1992), that Plaintiffs did not allege sufficient facts to "pierce" CenTra's corporate veil so as to make it responsible for wrongdoing by its subsidiaries. *Radaszewski* stands for the proposition that motor carriers are sufficiently capitalized as a matter of law if they meet federal financial responsibility requirements. All of CenTra's subsidiaries are sufficiently capitalized under federal motor carrier regulations and the Court will not consider Plaintiffs continued assertions that CenTra's subsidiaries are undercapitalized.

Plaintiffs now allege, on the basis of newly discovered evidence and in order to "prevent manifest injustice" that summary judgment be denied to CenTra. Plaintiff's new theory is that CenTra formed these subsidiaries in order to avoid its obligations to abide by federal motor carrier regulations. This theory is based on evidence not previously available to the Plaintiffs and the Court will, therefore, reconsider its August 9, 2007 order. *See* (Pl. Brief, 2-15).

The Plaintiffs further allege that all of the subsidiaries named are undercapitalized or lack adequate insurance. The Court will not reconsider this theory of Plaintiffs' case. All of the named subsidiaries either carry sufficient liability coverage or are sufficiently capitalized to comply with financial responsibility provisions of the Federal Motor Carrier Safety regulations. Plaintiffs knew the subsidiaries' financial reports before CenTra filed its motion for summary judgment. Eighth Circuit law clearly establishes that undercapitalization will not satisfy Plaintiffs' burden in proving that CenTra used its

subsidiaries for an improper purpose. *Radaszewski v. Telecom*, 981 F.2d 305, 308 (8th Cir. 1992); 49 C.F.R. § 387.9.

## II. Legal Standards

### A. Federal Rules of Civil Procedure 59(e) and 60(b)

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).[2]

### B. Missouri Law on Alter Ego Corporate Liability

Generally, an individual injured by the conduct of a corporation can only recover from that particular corporation. *Radaszewski v. Telecom Corp.*, 981 F.2d 305, 307 (8th Cir. 1992), *cert. denied*, 508 U.S. 908, 124 L. Ed. 2d 248, 113 S. Ct. 2338 (1993). The shareholders of a corporation, including the parent company if the corporation is a wholly-owned subsidiary, are not liable for the injury. *Id*. Missouri law permits exceptions to this general rule which allow the injured party to "pierce the corporate veil" and reach the assets of the parent corporation. *Kleweis v. Transport Support, Inc.*, 972 F. Supp. 494, 495 (E.D. Mo. 1997). In order to hold CenTra liable for the conduct of its

---

[2] The parties dispute whether Plaintiffs may properly bring a motion to reconsider under Fed. R. Civ. P. 59(e) providing for amendment of judgment or Fed. R. Civ. P. 60(b) providing for relief from judgment. In *Elder-Keep v. Aksamit*, 460 F.3d 979, 984-85 (8th Cir. 2006), the Eighth Circuit said: "[W]e have determined that motions for reconsideration are 'nothing more than 60(b) orders when directed at non-final motions.'" The Court disagrees with this conclusion by the Eighth Circuit. A district court has inherent authority to reconsider interlocutory orders. See 15B Wright and Miller, Federal Practice and Procedure § 3914.28, and, therefore, the exceptional hurdles of Rule 60 should not apply. This is because Rule 60 is intended to address judgments which are final. The standard for reconsideration should be much higher for final judgments than interlocutory orders because the principle of finality is seriously jeopardized if judgments can be reconsidered after the time for appeal has passed. In contract, interlocutory orders are often reconsidered based on the practicality of the circumstances and changes in an ever-evolving record.

Nonetheless, while the Court is bound by Eighth Circuit precedent, the distinction between Rule 60 and Rule 59 is irrelevant in this case because Plaintiffs have met the more stringent standard of Rule 60(b).

5

subsidiaries, the Plaintiffs must show: (1) that the defendant completely dominates and controls the finances, policy, and business practices of the corporate entity with respect to the transaction in dispute; (2) such control must have been used by the defendant for an improper purpose; and (3) the defendant's control of the corporate entity must have caused the plaintiff's injury. *Radaszewski*, 981 F.2d at 306; *Kleweis v. Transport Support, Inc.*, 972 F. Supp. 494, 495 (E.D. Mo. 1997); *Paglin v. Saztec Int'l, Inc.*, 834 F. Supp. 1184, 1191 (W.D. Mo. 1993). To determine whether the parent controls the subsidiary for purposes of piercing the corporate veil, courts consider the following factors:

>1) The parent corporation owns all or most of the capital stock of the subsidiary;
>
>2) The parent and subsidiary corporation have common directors or officers;
>
>3) The parent corporation finances the subsidiary;
>
>4) The parent corporation subscribes to all of the capital stock of the subsidiary or otherwise causes its incorporation;
>
>5) The subsidiary has grossly inadequate capital;
>
>6) The parent corporation pays the salaries and other expenses or losses of the subsidiary;
>
>7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;
>
>8) In the written material of the parent corporation, the subsidiary is described as a department or division of the parent, or its business or financial responsibility is referred to as the parent corporation's own;
>
>9) The parent corporation uses the property of the subsidiary as its own;
>
>10) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation and the latter's interest;

6

Case 2:06-cv-04137-NKL   Document 538   Filed 01/30/08   Page 6 of 12

11) The formal legal requirements of the subsidiary are not observed.

*Paglin*, 834 F. Supp. at 1191-92 (citing *Collet v. American Nat'l Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. App. 1986)). Depending on the circumstances, any combination of these factors may lead to a determination that the parent corporation sufficiently controls the subsidiary to allow piercing of the corporate veil. *Kleweis v. Transport Support, Inc.*, 972 F. Supp. 494, 495 (E.D. Mo. 1997) (citing *Paglin*, 834 F. Supp. at 1191).

## III.   Discussion

CenTra owned 100% of the stock of Pro Logistics and Central Transport at the time of the collision. At the time of the collision, CenTra, Pro Logistics and Central Transport shared the same location at 12225 Stephens Road, Warren, Michigan.[3] CenTra's subsidiary companies allocate book entries through a single meeting of each subsidiary's chief financial officer. The entries are made from a single budget. (Christ Dep. 34-35). CenTra caused the incorporation of Pro Logistics, Inc., to obtain licenses and authorities to undertake the motor carrier business. (Harned Dep. 17). Central Transport has a negative net worth of $133,570,142. (Pl. Ex. A). In addition, there is some evidence that the CenTra subsidiaries do not observe corporate formalities. For example, at the time of the collision, Central Transport provided safety services to Pro Logistics without any written agreement nor any obvious evidence that they received

---

[3] Pro Logistics subsequently moved to 11355 Stephens Road, Warren, Michigan, in February of 2007.

7

compensation for those services. (Christ Dep. 18). CenTra does not share any directors or officers in common with either Central Transport or Pro Logistics, but Plaintiffs have set forth evidence that CenTra's President and Vice-President, nevertheless, exercise control over the day-to-day activities of the subsidiaries, including Central Transport and Pro Logistics.[4] Based on the foregoing, the Plaintiffs have presented evidence on several of the eleven factors set forth above. Accordingly, the Court concludes that there are genuine issues of material fact with respect to the amount of control CenTra exercises over Pro Logistics and Central Transport.

Next, CenTra argues that it is not subject to alter ego liability because there is no evidence that it exercised its alleged control over Central Transport or Pro Logistics for an improper purpose. Specifically, CenTra argues that no CenTra employee was responsible for or exercised control over Pro Logistics' hiring and supervising of drivers. However, Missouri law does not require that a parent company's employee directly cause plaintiff's injury. Rather, the improper purpose element requires the plaintiff to show that the control exercised by the defendant involved a fraud or wrong, the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights. *Radaszewski*, 981 F.2d at 306. Most veil-piercing theories allege undercapitalization or establishing shell companies to avoid paying creditors. *See 66, Inc.*

---

[4]For example, Anne Moroun, the Vice-President of Human Resources for Central Transport, meets with her brother and nephew, the President and Vice-President of CenTra, on a regular basis, and requested their direct intervention to resolve a personnel dispute with Scott Wolfe, the President of Pro Logistics.

8

*v. Crestwood Commons Redevelopment Corp.*, 998 S.W.2d 32 (Mo. 1999); *Real Estate Investors Four, Inc. v. Am. Design Group*, 46 S.W.3d 51 (Mo. Ct. App. 2001); *Sansone v. Moseley*, 912 S.W.2d 666 (Mo. Ct. App. 1995); *K.C. Roofing Center v. On Top Roofing, Inc.*, 807 S.W.2d 545 (Mo. Ct. App. 1991). "But actual fraud is not necessarily a predicate for piercing the corporate veil; it may also be pierced to prevent injustice or inequitable consequences." *Id*. (citing 18 Am. Jur. 2d Corporations § 50 (1985); 1 Fletcher Cyclopedia Corporations § 41.10 (1990)).

Plaintiffs argue that CenTra violated a positive legal duty or engaged in an unjust act by failing to ensure that Pro Logistics met its obligations under applicable motor safety regulations. The evidence supports Plaintiff's theory that CenTra formed Pro Logistics in order to obtain "licenses and authorities" to undertake motor carrier operations and then used those subsidiaries to avoid the obligations imposed by those licenses and authorities. (Harned Dep. 17). CenTra's Vice-President, Norman Harned, did not know what company performs the safety aspects of the motor carrier operations for CenTra's subsidiaries. (Harned Dep. 21-22). Although Central Transport provided safety services to Pro Logistics and was charged with monitoring driver violations, no written agreement existed between the two companies and Central Transport did not provide driver verification services to Pro Logistics. (Golec Dep. 45); (Christ Dep. 25). Larry Cox, who obtains insurance on behalf of Pro Logistics, admitted that in a second serious collision involving one of Pro Logistics' drivers, two years' driving experience and a 20-minute training video was "obviously not" sufficient preparation to avoid an

9

accident. (Cox Dep. 89-90).

Missouri law takes an expansive view of liability related to motor carriers' obligations. Mo. Rev. Stat. § 390.011, provides that the purpose of Missouri motor carrier regulations is to promote safe, adequate, economical and efficient transportation. Missouri law specifically allows its state regulators to inquire into the management of persons controlling licensed motor carriers. Mo. Rev. Stat. § 390.041. Finally, Mo. Rev. Stat. § 390.171, provides that any

> owner . . . of any motor carrier who violates or fails to comply with or who procures, aids or abets in the violation of any provision of this chapter, or who fails to obey, observe or comply with any order, decision, rule or regulation, direction, demand or requirement of the division, or who procures, aids or abets any person in his failure to obey, observe or comply with any such order, decision, rule, direction, demand or regulation thereof is guilty of a misdemeanor.

By statute, Missouri law includes owners of motor carriers who "fail to obey" applicable regulations. Under *Kleweis v. Transport Support*, 972 F. Supp. 494, citing *Radaszewski*, the Eastern District of Missouri found that plaintiffs presented a triable issue as to piercing the corporate veil where the plaintiffs showed that the parent company did not disclose safety information to its subsidiaries which manufactured and distributed trailers. An employee was injured while trying to "tie down" on a trailer and was injured. The court ruled that failure to disclose safety information created a genuine issue of material fact as to whether the parent company used its subsidiaries for "an improper purpose." Based on the foregoing, the Court concludes that there are genuine issues of material fact regarding whether CenTra exercised control over Central Transport and Pro Logistics for

10

an unlawful purpose.

Plaintiffs have also established a triable issue as to whether CenTra's control and breach of duty proximately caused Plaintiffs' injury. *Collet v. American National Stores, Inc.*, 708 S.W.2d 273, 284 (Mo. Ct. App. 1986); *Real Estate Investors Four, Inc. v. Am. Design Group*, 46 S.W.3d 51, 56 (Mo. Ct. App. 2001). Albright was on several pain medications and had a poor medical history, including heart attack and stroke. (Pl. Ex. P). Albright had a conviction for reckless driving before being hired by Pro Logistics, which "should" have disqualified him from employment under Pro Logistics' stated procedures. (Golec Dep. 126). Central Transport, charged with maintaining Albright's logs, admitted that Albright had violated hours of service restrictions on May 11, 2006, and that it did not have all of Albright's logbooks. (Cummings Aff. ¶ 5). Department of Transportation regulations impose hours-of-service limitations on truck drivers. Regulated motor carriers may not permit their drivers to drive more than ten hours after an eight-hour break, more than sixty hours per week, more than seventy hours in an eight-day period, or after having been on duty fifteen hours. *See* 49 C.F.R. § 395.3. To enforce these limitations, the regulations further provide that commercial motor carriers must require drivers to record their "duty status" for each twenty-four-hour period, detailing on a prescribed form their time spent driving, resting in the vehicle's sleeper berth, on-duty but not driving, and off duty. *See* 49 C.F.R. § 395.8(b); *United States v. McCord, Inc.*, 143 F.3d 1095, 1096 (8th Cir. 1998). Plaintiffs have also set forth evidence that this

11

Case 2:06-cv-04137-NKL   Document 538   Filed 01/30/08   Page 11 of 12

collision may be part of a pattern of collisions caused by improperly supervised, hired or trained drivers employed by Pro Logistics.  (Cox Dep. 29, 64-65).

**IV.  Conclusion**

The new evidence presented by Plaintiffs establishes a triable issue as to CenTra's control over Central Transport and Pro Logistics in failing to respect applicable federal and state motor carrier safety regulations.  Plaintiffs have satisfied Rule 60(b)(2) requirements as to new evidence and due diligence.

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Reconsideration [Doc. # 274] is GRANTED and this Court's Order of August 9, 2007 [Doc. # 254], is vacated.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 30, 2008
Jefferson City, Missouri