IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES GARRETT, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 06-CV-4137-NKL (Consolidated with Case Nos. 06-CV-0785, 06-CV-4139, 06-CV-4209 and 06-CV-4237) |
| GEORGE MARTIN ALBRIGHT, JR., et al., | ) ) ) | |
| Defendants. | ) | |

**ORDER**

This case involves four lawsuits that arose from a June 1, 2006, automotive accident on Interstate 70 in which four people died and several others were injured.[1] The defendants are George Martin Albright, Jr.; Trucker's Plus HR, Inc. ("Trucker's Plus"); Resolve Staffing, Inc. ("Resolve Staffing"); Logistics Services, Inc. ("Logistics Services"); GLS LeasCo Corporation ("GLS Leasco"); Logistics Insight Corporation ("Logistics Insight"); CenTra, Inc. ("CenTra"); Central Transport, Inc. ("Central Transport"); Pro Logistics, Inc. ("Pro Logistics").

Pending before the Court are Logistics Insight's and Logistics Services' Motions for Summary Judgment [Docs. 461, 463]. For the reasons stated herein, Logistics Insight's motion is DENIED and Logistics Services' motion is GRANTED.

**I.  Facts**

---

[1] On January 8, 2008, this Court dismissed Case No. 06-4237-CV-W-NKL pursuant to Fed. R. Civ. P. 41(a)(2).

1

On June 1, 2006, George Albright, Jr., was driving the tractor-trailer that caused the accident that is the subject of this case. On that date, Albright was an employee of Trucker's Plus, which is a division of Resolve Staffing, and was working as a commercial driver for Pro Logistics. Central Transport provided safety and administrative services to Pro Logistics. Plaintiffs have previously set forth sufficient evidence that Pro Logistics' and Central Transport's failures to monitor driver safety proximately caused the collision.[2] Like Pro Logistics and Central Transport, Logistics Insight and Logistics Services are subsidiary corporations of CenTra, Inc., a holding and investment company that owns and manages a portfolio of investments, including approximately 50 subsidiary and affiliated companies. (Harned Dep., 8).[3] Pro Logistics, Logistics Insight and Logistics Services share the same parent company, LINC Logistics Company ("LINC Logistics"), a subsidiary of CenTra, Inc.[4]

---

[2] Albright had a conviction for reckless driving before being hired by Pro Logistics, which "should" have disqualified him from employment under Pro Logistics' stated procedures. (Golec Dep., 126). Central Transport, charged with maintaining Albright's logs, admitted that Albright had violated hours of service restrictions on May 11, 2006, and that it did not have all of Albright's logbooks. (Cummings Aff. ¶ 5).

[3] CenTra, Central Transport and GLS LeaseCo all maintain their business and registered offices at 12225 Stevens Road in Warren, Michigan. At the time of the accident, several other CenTra subsidiaries and affiliates also maintained their offices at 12225 Stevens, including LINC Logistics, Logistics Insight, Logistics Services and Pro Logistics. At 12225 Stevens, CenTra shares receptionist services with its related companies.

[4] The evidence conflicts as to when this structure developed and whether it accurately reflects the ownership and activity of CenTra's subsidiaries either at the time of the collision or presently. Defendants produced a corporate chart to Plaintiffs which reflected that LINC Logistics was the parent of Pro Logistics, Logistics Services and Logistics Insight as of the day of the collision, June 1, 2006. (Pl. Ex. A). However, Pro Logistics' Vice-President of Operations, Joseph Golec, testified that LINC Logistics did not become the parent of Pro Logistics until "the end of 2006." (Golec Dep., 11). Before that time, CenTra, Inc., was the owner of Pro Logistics. *Id.* Central

Logistics Insight's deposition witnesses provided varying accounts as to the company's purpose and activities. Larry Cox ("Cox"), Logistics Insight's Director of Trucking Operations,[5] testified that Logistics Insight is a holding company for "the truck lines and some of the other operations" of Pro Logistics, Mohican and LINC Ontario.[6] Michael Akkanen ("Akkanen"), the Senior Vice-President of Logistics Insight, testified that Logistics Insight is not a holding company, it is "a real company." (Akkanen Dep., 8).[7] Logistics Insight is "a logistics company that is quasi-asset non-asset based that services the OEM industry and the major tier ones." (Akkanen Dep., 7). Akkanen further testified that Logistics Insight was "responsible for all of the business opportunities that are offered to us. We have the people in-house to do the operating engineering portions of the business . . . ." (Akkanen Dep., 12). Richard Silverwood ("Silverwood"), the Vice-President of Industrial Relations for Logistics Insight, testified that Logistics Insight

---

Transport, Inc.'s Vice-President, Thomas Christ, stated that Pro Logistics was a subsidiary of Logistics Insight Corporation which was a wholly-owned subsidiary of CenTra, Inc. (Christ Dep., 16). Michael Akkanen, Pro Logistics' Secretary and Vice-President, affirmed that Pro Logistics had "always been under" Logistics Insight. (Akkanen Dep., 13).

[5] This evidence is viewed in the light most favorable to the nonmovant. Cox seemed uncertain whether Logistics Insight employed him. During his deposition testimony, Cox stated that he worked at "Linc", "Logistics Insight" and Pro Logistics. (Cox Dep., 11-12, 84). Cox later stated that he did not work for Logistics Insight or Pro Logistics. (Cox Dep., 97). Any inconsistency in deposition testimony is to be explored at trial. *See Alexander v. Vesta Ins. Group, Inc.*, 147 F. Supp. 2d 1223, 1240 (M.D. Ga. 2001).

[6] Mohican is a trucking operation and a subsidiary of LINC Ontario which is also a motor carrier. (Cox Dep., 16-17).

[7] Akkanen is also Vice-President and Secretary of Pro Logistics, LINC Logistics and Logistics Insight as well as an officer of LINC Ontario and LGSI Equipment of Wyoming. (Akkanen Dep., 6).

was "a logistics management company. Logistics Insight provide[s] transportation, warehousing, sequencing, subassembly for both automotive and nonautomotive companies." (Silverwood Dep., 12). Harold Wolfe, Logistics Insight's President states that it is a "third-party logistics company" that provides marketing, business development and administrative service systems to CenTra subsidiaries. (Wolfe Dep., 11-12).

Regardless of Logistics Insight's corporate activities, it is undisputed that Cox negotiated and accepted the employment contract between Pro Logistics and Trucker's Plus retaining Albright's driving services. (Cox Dep., 19-21). In addition to general authority to negotiate contracts on behalf of Pro Logistics, Cox, "make[s] sure that the people in the field have what they need to do their jobs . . . In other words, they actually make their decisions and do their jobs. If they have a problem, then they come to me." (Cox Dep., 18, 19-21, 97). While Logistics Insight could not directly reprimand Albright for logbook violations, upon discovery of a violation, Logistics Insight would "notify the service and tell [the driver] he's no longer welcome back."[8] (Cox Dep., 46). Cox further admitted that he was responsible for "enforcing and insuring that [a driver] abides by the hours of service guidelines." (Cox Dep., 83).

As with Logistics Insight, statements as to Logistics Services' corporate activities are inconsistent. According to its President, Harold Wolfe, Logistics Services is a

---

[8]Cox is also the President of OTR Logistics, the Secretary of On Demand Transport and the Manager of Maintenance Insight, LINC (or Logistics Insight's) arm of maintenance. Cox receives a single weekly salary for these positions. (Cox Dep., 37-39). Cox also affirmed that he was Pro Logistics Director of Operations, although his own deposition testimony conflicts on that point. (Cox. Dep., 84).

4

staffing and human resources company. (Wolfe Dep., 12). Silverwood states that Logistics Services transports parts to auto manufacturers. (Silverwood Dep., 14-15). In this case, Logistics Services leased the license plate used on the tractor unit Albright drove at the time of the collision. (Cox Dep., 144). Logistics Insight uses Logistics Services as an "operating company." (Silverwood Dep., 29).

## II. Discussion

Logistics Insight and Logistics Services have moved for summary judgment on the grounds that they "did not employ Mr. Albright, control his conduct, have a right of control over Mr. Albright's conduct, or authorize Mr. Albright to perform any activity, job, or function on its behalf on the date of the accident giving rise to this lawsuit (or at any other time)." (Docs. 461, 463). According to Logistics Insight, it "is a third-party logistics company that provides marketing and administrative services to companies. LIC is not a motor carrier; it does not employ or contract with drivers (including Mr. Albright); it does not broker, dispatch, or otherwise procure transportation freight; and it does not provide over-the-road trucking services." (Doc. 462, 1). Logistics Services similarly argues that it did not employ, control or direct Mr. Albright's conduct nor broker, dispatch or direct freight. Logistics Services argues that it has "**one** connection to the accident giving rise to this lawsuit: it registered the license plate on the tractor operated by Mr. Albright." (Doc. 464, 1) (emphasis in original). For their part, Plaintiffs do not generally dispute Logistics Insight's or Logistics Services' statements of uncontroverted fact. Rather, Plaintiffs argue that Logistics Insight and Logistics Services

5

are "nothing more than . . . department[s] of Centra's trucking operation, and Mr. Albright was driving on behalf of Centra-related entities." (Docs. 524-25, 2).

### A. Negligence

Plaintiffs allege negligence and negligence *per se* claims against both Logistics Insight and Logistics Services for failing to comply with state and federal motor carrier regulations. Plaintiffs allege that the deadly collision on June 1, 2006 was proximately caused by these Defendants' negligence. Logistics Insight responds that it had "absolutely **no connection**" to Albright and it, therefore, cannot be held liable as 1) it owed the Plaintiffs no duty and 2) it did not serve as Albright's employer or principal for purposes of *respondeat superior* liability. (Logistics Insight Mot., 8) (emphasis in original). Logistics Services argues that its only involvement was registering the license plate on Albright's tractor unit.

Under Missouri law, the elements of negligence are (1) the existence of a duty by the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from the defendant's failure. *Maryland Heights Leasing, Inc. v. Mallinckrodt, Inc.*, 706 S.W.2d 218, 2223 (Mo. Ct. App. 1985). A Plaintiff may prevail in an action for negligence *per se* where it establishes (1) a violation of a statute or ordinance; (2) he or she was a member of the class of persons intended to be protected by the statute; (3) the injury complained of was the kind the statute was designed to prevent; and (4) the violation of the statute or ordinance was the

6

proximate cause of the injury. *Sill v. Burlington N. & Sante Fe Ry.*, 87 S.W.3d 386, 392 (Mo. Ct. App. 2002).

On January 30, 2008, this Court determined that Missouri law imposes a direct statutory duty on the "owner, officer, agent or employee of any motor carrier" for compliance with motor carrier safety regulations. Missouri's statutes related to motor carrier safety regulation, including Mo. Rev. Stat. § 390.171, have been "designed with the protection of the public as the paramount goal to be achieved." *Omaha Indem. Co. v. Pall, Inc.*, 817 S.W.2d 491, 497 (Mo. Ct. App. 1991); *see also Coon v. Am. Compressed Steel, Inc.*, 207 S.W.3d 629, 638 (Mo. Ct. App. 2006) (sustaining award of punitive damages because the motor carrier had shown a conscious disregard for public safety in failing to comply with federal and state motor carrier regulations and industry standards). Therefore, a violation of Missouri's laws related to trucking safety can support a claim for negligence *per se*.

### 1. Logistics Insight

Plaintiffs have set forth sufficient evidence on each element of their claims as to Logistics Insight. Plaintiffs have set forth sufficient evidence such that a reasonable juror could conclude that 1) Logistics Insight acted as Pro Logistics' agent in obtaining Albright's services; and 2) Logistics Insight owed an independent duty to Plaintiffs in exercising reasonable care when hiring Albright. Missouri law imposes a direct statutory duty on Logistics Insight as Pro Logistics' agent, to comply with motor carrier safety regulations. Mo. Rev. Stat. § 390.171.

Missouri law also imposes a direct duty to exercise reasonable care when hiring an independent contractor. *See Lonero v. Dillick*, 208 S.W.3d 323, 329 (Mo. Ct. App. 2006); *State ex. rel. McHaffie v. Bunch*, 891 S.W.2d 822, 825 (Mo. banc 1995). "Foreseeability is the paramount factor in determining the existence of a duty, but a relationship between the parties where one is acting for the benefit of another also plays a role . . . There must also be some right or obligation to control the activity which presents the danger of injury." *Burrell ex. rel. Schatz v. O'Reilly Auto, Inc.*, 175 S.W.3d 642, 656 (Mo. Ct. App. 2005). Although Logistics Insight claims that it is "a third-party logistics company that provides marketing and administrative services to companies," none of Logistics Insight's proffered witnesses can confirm with any certainty the nature of Logistics Insight's activities or even its corporate separateness.[9] Certainly, there is evidence to support the conclusion that Logistics Insight retained Albright's services and had a continuing ability to control his conduct by not permitting him to serve as a driver if he failed to comply with the law and company regulations.

Cox negotiated the contract between Pro Logistics and Truckers HR and has general authority to negotiate contracts on behalf of Pro Logistics because "it's [Cox's]

---

[9]Indeed, it is not clear from the record that Logistics Insight was ever an independent entity. Cox, a former employee of Central Transport, confirmed that "people commonly refer to Logistics Insight as Linc." (Cox Dep., 12). Logistics Insight and LINC Logistics were the same company before April 2007. (Silverwood Dep., 18) ("At some point Logistics Insight Corp and LINC were the same thing? They were – they were – they were the automotive companies really called us LINC . . . it was another name for Logistics Insight.").

job as director of truckload operations" for Logistics Insight.[10] (Cox Dep., 97).[11] Cox further "make[s] sure that the people in the field have what they need to do their jobs . . . In other words, they actually make their decisions and do their jobs. If they have a problem, then they come to me." (Cox Dep., 18). Cox further implied that he had the power to control Albright when he stated that "[i]f [Albright] didn't have a log along with his paperwork, he wouldn't get paid." (Cox Dep., 46). While Logistics Insight could not directly reprimand Albright for logbook violations, Cox would "notify the service and tell him he's no longer welcome back." (Cox Dep., 46). Cox further confirmed that he was responsible for "enforcing and insuring that [the driver] abides by the hours of service guidelines." (Cox Dep., 82-83). Cox's testimony alone establishes a triable issue as to whether Logistics Insight owed the Plaintiffs a duty to retain responsible drivers and to not permit Albright to drive if he proved an unsafe driver. Injuries caused by its failure to check Albright's driving or medical record is certainly foreseeable. Moreover, Cox's statements would support a conclusion that Logistics Insight had "the right or power to

---

[10] In his deposition, Cox stated that he had authority to sign a lease agreement on behalf of Pro Logistics because "it's my job as director of truckload operations for Linc." (Cox Dep., 97). Earlier in the deposition, Plaintiffs asked "When you were saying Linc earlier, were you referring to Linc Logistics or Logistics Insight?" Cox responded "Logistics Insight." (Cox Dep., 12). Cox also stated that he worked for Logistics Insight. (Cox Dep., 5). Given that the Court must draw all reasonable inferences in favor of the non-moving party, the Court will assume that Cox meant "Logistics Insight" when admitting his general authority to sign agreements on behalf of Pro Logistics.

[11] There is no dispute that Cox obtained Albright's services on behalf of Pro Logistics. There is ambiguity in the record as to whom Cox worked for at the time of the collision. During his deposition, Cox stated that he worked for Logistics Insight, not LINC Logistics. (Cox Dep., 11-12, 16). Cox later stated that he did not work for Logistics Insight or Pro Logistics (Cox Dep., 97).

9

control and direct the physical conduct" of Albright.  *See Hougland v. Pulitzer Publishing Co., Inc.*, 939 S.W.2d 31, 33 (Mo. Ct. App. 1997).  A reasonable juror could conclude that not only was Logistics Insight acting as Pro Logistics' agent in retaining Albright for employment, but that Logistics Insight violated a direct duty owed to Plaintiffs.

Similarly, Plaintiffs have set forth evidence as to Logistics Insight's negligence *per se*.  Logistics Insight acted as Pro Logistics' agent in obtaining and retaining Albright's services.  *See* Mo. Rev. Stat. § 390.171.   Plaintiffs have further set forth evidence that Pro Logistics failed to comply with federal and state motor carrier regulations and that Cox was responsible for "enforcing and insuring that [the driver] abides by the hours of service guidelines."  (Cox Dep., 82-83).  Plaintiffs are within the class of persons the Missouri legislature intended to protect through its motor carrier safety laws.  *See Omaha Indem. Co. v. Pall, Inc.*, 817 S.W.2d 491, 497 (Mo. Ct. App. 1991).  Since Logistics Insight does not contest any other element of Plaintiffs' claim for negligence *per se*, Logistics Insight's motion for summary judgment will be denied.

Logistics Insight's motion for summary judgment as to Plaintiffs' punitive damages claim is based solely on its argument that Albright's negligence may not be imputed to Logistics Insight.  The Court has concluded that the Plaintiffs have set forth evidence as to their negligence and negligence *per se* claims against Logistics Insight.  Missouri law also clearly permits punitive damages where Plaintiffs show conscious disregard for public safety in failing to comply with federal and state motor carrier

regulations and industry standards. *Coon v. Am. Compressed Steel, Inc.*, 207 S.W.3d 629, 638 (Mo. Ct. App. 2006).

### 2. Logistics Services

Plaintiffs have failed to establish any theory of liability applicable to Logistics Services. Plaintiffs admit Logistics Services' statements of uncontroverted fact which include in relevant part that the only connection Logistics Services has to the collision is that it registered the license plate on the tractor involved. (Wolfe Dep., 30). Logistics Services did not hire, supervise or train Albright. Plaintiffs have not asserted that Logistics Services acted as the owner, officer, agent or employee of any motor carrier accused to have violated motor carrier safety regulations. Plaintiffs assert that Logistics Services is a wholly owned subsidiary of CenTra; Logistics Services is a motor carrier that leases trucks and drivers; and, that Logistics Services and Logistics Insight are "so interrelated that they are impossible to distinguish." (Doc. 524, 7). The only evidence Plaintiffs set forth as to Logistics Services' liability are certain statements by Logistics Insight's employee, Silverwood, that he "believed" Logistics Insight and Logistics Services were separate and that Logistics Services registered GLS LeaseCo's license plates because the two companies are "related." (Doc. 524, 5). These statements do not establish any duty on behalf of Logistics Services toward Plaintiffs nor any direct relationship with Albright.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Logistics Insight's Motion for Summary Judgment [Doc. 461] is DENIED; and,

ORDERED that Logistics Services's Motion for Summary Judgment [Doc. 463] is GRANTED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: March 6, 2008  
Jefferson City, Missouri