IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JAMES GARRETT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 06-CV-4137-NKL |
| ) | (Consolidated with Case Nos. 06-CV- |
| GEORGE MARTIN ALBRIGHT, JR., et al.,) | 0785, 06-CV-4139, 06-CV-4209 and 06- |
| ) | CV-4237) |
| Defendants. ) | |

**ORDER**

This case involves four lawsuits that arose from a June 1, 2006, automotive accident on Interstate 70 in which four people died and several others were injured.[1] The defendants are George Martin Albright, Jr.; Trucker's Plus HR, Inc. ("Trucker's Plus"); Resolve Staffing, Inc. ("Resolve Staffing"); GLS LeasCo Corporation ("GLS Leasco"); Logistics Insight Corporation ("Logistics Insight"); CenTra, Inc. ("CenTra"); and Pro Logistics, Inc. ("Pro Logistics").

Pending before the Court are Defendants' Motions to Exclude Certain Testimony of Plaintiffs' expert, Walter A. Guntharp, Jr. ("Guntharp") [Docs. ## 466, 474, 481]. For the reasons stated herein, Defendants' Motions are GRANTED in part and DENIED in part.

**I. Background**

---

[1] On January 8, 2008, this Court dismissed Case No. 06-4237-CV-W-NKL, pursuant to Fed. R. Civ. P. 41(a)(2).

1

On June 1, 2006, George Albright, Jr. ("Albright"), was driving the tractor-trailer that caused the accident that is the subject of this case. On that date, Albright was an employee of Trucker's Plus, which is a division of Resolve Staffing, and was working as a commercial driver for Pro Logistics. Although Trucker's Plus considered Albright well-qualified, Albright had a history of cardiac deficiency, stroke, diabetes and glaucoma. (Fuston Dep., 45; Albright Dep., 108, 366, 407-08, 418). At the time he was hired and as of the day of the collision, Albright was taking ten (10) prescription medications, "almost all of which list drowsiness and loss of consciousness as a potential side effect . . . ." (Doc. 528, 28).[2] The Plaintiffs claim that Trucker's Plus and Pro Logistics negligently hired Albright. This claim depends in part on Plaintiffs establishing that there are general industry practices with regard to qualifying drivers which Pro Logistics and Trucker's Plus failed to adopt.[3] Plaintiffs submit Guntharp's testimony to establish industry practices. For their part, Defendants claim that Guntharp's testimony is unreliable and not admissible 1) to the extent it states legal conclusions; 2) expresses opinions outside his area of expertise; and 3) expresses speculative opinions.

---

[2] The statement is drawn from deposition testimony given by Charles Reskin, D.O. (Reskin Dep., 149-55). Reskin noted that for many of the medications, drowsiness or loss of consciousness is a listed side effect but not "common."

[3] Defendants theory, on the other hand, suggests that there are no industry practices beyond the Federal Motor Carrier Safety Regulations. (Doc. 483, 9). For example, while Federal Motor Carrier Safety Regulations require that drivers reach 21 years of age, industry practice, due in part to insurance underwriting requirements, demands that drivers reach "23 or 24" years of age. (Guntharp Dep. 210-211).

Plaintiffs have the burden of establishing the admissibility of Guntharp's testimony. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). To be admissible, expert testimony must be both relevant to a material issue and reliable. *Margolies v. McCleary*, Inc., 447 F.3d 1115, 1120 (8th Cir. 2006). Under Federal Rule of Evidence 702, if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Expert testimony may not be permitted where it is based upon speculation. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000).

## II. Guntharp's Qualifications

Although Defendants describe Guntharp's educational background as "suspect," it is Guntharp's knowledge and experience which qualify him as an expert in trucking industry practices. *See Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990) (finding practical experience sufficient to qualify an expert). Guntharp started as an over-the-road truck driver between 1976 and 1979. Between 1981 and 1987, Guntharp served as safety director for three trucking companies as well as teaching defensive driving classes to commercial motor vehicle drivers for the Indiana Bureau of Motor Vehicles. (Guntharp CV, 3). From 1987 until 2000, Guntharp served as a safety engineer for John Deere

Transportation Insurance evaluating trucking companies for underwriting purposes and assisting "insureds to come into compliance with federal regulations and industry standards." *Id.*[4] From 2000, Guntharp has been a consultant with Thorn Valley Enterprises which provides safety consulting and driver safety training to trucking companies. (Guntharp CV, 2). Guntharp has consulted and testified about truck drivers' general safety practices. *See Estate of Schmidt v. Derenia*, 822 N.E.2d 401, 407 (Ohio Ct. App. 2004). According to Guntharp's curriculum vitae, he "evaluates transportation companies' hiring and safety practices . . . ." *Id.* The Court therefore finds that Guntharp is qualified as an expert by experience, knowledge and training.

## III. Reliability

Defendants argue that Guntharp lacks sufficient facts or data to provide an expert opinion because 1) he based his opinion on insurance underwriting standards; 2) he has published no studies supporting his views; and 3) he has seen no studies supporting his views. (Doc. 483, 7-8). In the trucking context, an expert may base an opinion on personal experience when the testimony is used to establish an industry standard. *See Knous v. ConAgra Foods, Inc.*, 2006 U.S. Dist. LEXIS 78632 (W.D. Ky. Oct. 27, 2006); *Christensen v. Lemaster*, 2006 U.S. Dist. LEXIS 16905 (D. Idaho 2006) (qualifying an expert on motor carrier industry standards and minimum duties a motor carrier driver who

---

[4] Defendants criticize Guntharp because he saw "perhaps 4,000 companies" out of "approximately 500,000 - 600,000 carriers in existence in the U.S." Defendants intend on submitting evidence that Guntharp's experience is not sufficiently representative to give credible testimony as to "industry practices" for various reasons. That is an issue of credibility, not admissibility. Testimony on industry practices is clearly permitted in trucking collision cases.

4

had been employed as a safety director at three companies over ten years). Under Missouri law, industry practices and standards are clearly relevant to alleged negligence by motor carriers. *See Coon v. Am. Compressed Steel*, 207 S.W.3d 629, 638 (Mo. Ct. App. 2006). Thus, the Court rejects Defendants' demand that Guntharp produce "statistical documentation" for his claim that more than 50% of motor carriers do additional follow-up if a driver is only medically qualified for one year instead of two. (Doc. 483, 8). Defendants may explore the credibility of Guntharp's assessment during cross-examination. In addition, Guntharp relied upon insurance underwriting manuals in assessing applicable industry standards. The Court concludes that Guntharp's testimony offers a reliable source of expert opinion which will assist the jury in understanding motor carrier regulations and industry practices.

Defendants next argue that Guntharp and Guntharp's counsel failed to produce "records of Thorn Valley's activities and any publications from Mr. Guntharp relative to that business." (Doc. 483, 9). Defendants assert that the insurance underwriting manuals and Guntharp clients' identities are necessary to "provide the foundation that *Daubert* requires." *Id.* at 10. Because Defendants have been deprived of relevant cross-examination material, they request that Guntharp's testimony be excluded. Defendants cite *Monsanto Co. v. Cropscience*, 214 F.R.D. 545 (E.D. Mo. 2002), for the proposition that a party must disclose "the basis for his [expert's] opinions." First, in *Monsanto*, as here, the appropriate procedure to obtain discovery that is allegedly wrongfully withheld is a motion to compel. Second, Guntharp did disclose the sources upon which he based

5

his opinion. There is insufficient evidence that proprietary documents related to Guntharp's current employer were needed to effectively explore Guntharp's opinions. The Court will not grant the sanction of exclusion where Defendants never previously raised the issue with the Court.[5]

## IV. Scope of Guntharp's Testimony

### A. Legal Conclusions

Defendants next request that the Court preclude any legal conclusions drawn in Guntharp's expert reports. Generally, Defendants are correct that Guntharp may not draw legal conclusions nor may Guntharp opine on Albright's state of mind. *See United States v. Klaphake*, 64 F.3d 435, 438-39 (8th Cir. 1995); *Christensen v. Lemaster*, 2006 U.S. Dist. LEXIS 16905 (D. Idaho 2006) ("Atkinson is not an expert in either the law or psychology -- and did not personally observe [defendant's] conduct -- and thus has nothing to offer on whether [the defendant] acted with "extremely harmful state of mind . . ."). Defendants contest the following conclusions found in Guntharp's Report:

> 1. Centra is a holding company that owns numerous companies including Central Transport, Central Transport International, CTX, LINC Logistics, and GLS Leasco;
>
> 2. Linc Logistics is the parent company of Logistics Insight, Inc. and Pro Logistics, Inc.;

---

[5] Defendants state that their expert's refusal to disclose proprietary materials is "in no way analogous" to Guntharp's failure to do so, but do not deny that they objected to the production of proprietary materials. Plaintiffs claim that "based upon the parties' mutual agreement, plaintiffs did not seek to compel the requested information from Mr. Morgan, Dr. Reskin, or Mr. Sink and defendants likewise have never sought to compel the requested information from Mr. Guntharp." (Doc. 500, 14).

> 3. Central Transport owns and operates Safety Management Consultants, a company that provides safety services to companies other than Central Transport, including Pro Logistics, Inc.;
>
> 4. GLS Leasco is in business to provide equipment to Centra owned transportation companies. (Guntharp Report, 4).[6]
>
> . . . .
>
> 28. The actions of George Albright are not consistent with industry expectations of a professional driver and represent an intentional and reckless disregard for the safety of the motoring public.
>
> . . . .
>
> 30. Had Trucker's Plus, Pro Logistics, Inc., or Safety Management Consultants fulfilled their duties and obligations, Mr. Albright would have been disqualified from operating a commercial motor vehicle and this collision would not have occurred. (Guntharp Report, 7).

The Court will preclude Guntharp's testimony as to the structure of CenTra and its subsidiaries unless Guntharp can establish that he has first-hand knowledge such as corporate formation or merger documents or experience with these specific entities. The Court further agrees that the word "intentional" is a legal term-of-art, the interpretation of which is beyond Guntharp's expertise. However, the use of the word "reckless" is relevant to whether Albright exhibited disregard for the standard of care in the industry. To the extent Guntharp is testifying as to where on a continuum of fault Albright's

---

[6] Central Transport argues that Guntharp's testimony is erroneous because CenTra does not own Central Transport, Inc. "[T]hat is true today and has been continuously, back to 2002, well before the accident." The Plaintiffs and the Court have been engaged in a continuous effort to identify entities in this litigation, due almost exclusively to Defendants' shifting of corporate names, locations, structure and inconsistent testimony. Indeed, in its original disclosure of corporate interests, Central Transport identifies its only parent company as CenTra, Inc. (Doc. 54). While Local Rule 3.1. is important for the purposes of determining the necessity or propriety of recusal, failure to identify other parent companies is nevertheless a clear violation.

7

conduct falls, he may describe that conduct as "reckless" but may not ultimately conclude that Albright's conduct as "intentional" because Guntharp is not qualified to give an opinion on Albright's state of mind.  The word "duty," while having an obvious legal implication, also has a meaning that is familiar to lay people and will therefore help the jury to understand Guntharp's opinions about industry standards.  The Court will not grant Defendants' motion to exclude Guntharp's use of the word "duty" or "obligation" or "reckless".  The Court will permit Guntharp to refer to these terms in relationship to general industry practices the Defendants may not have adopted or observed.

### B. Medical Testimony

Guntharp is not, nor does he claim to be, a physician or capable of providing medical testimony.  As a threshold matter, just because testimony touches on medical issues does not preclude testimony from experts who are not healthcare professionals. *See Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990) ("The engineers' lack of medical training did not render them wholly incompetent to offer expert opinions as to who was driving the car in this case.").  Guntharp's testimony in this regard treads a fine line between medical expertise - that Albright was "under the influence" of prescribed medications; and, expertise in motor carrier safety regulations - a driver may not use a "narcotic" unless a licensed medical practitioner has advised the driver that the drug will not adversely affect his or her ability to safely operate a motor vehicle.  FMCSR 391.41(b)(12)(B).  Guntharp may testify as to the latter, but not the former.

Defendants are incorrect that prescription medication use does not violate motor

8

carrier regulations. Those regulations require a driver to secure an advisement that the drug will not adversely affect the ability to drive. Here, there is evidence that Albright did not secure such an advisement. Albright admitted that he took diazepam the day of the accident and Plaintiffs have set forth evidence that he was on the road at the time he took it. Defendants' expert could not state what amount of diazepam Albright could take and escape detection in a urine sample. (Long Dep., 83). Defendants' expert Reskin stated that "no one should take Valium and then drive." (Reskin Dep., 64). However, Reskin and Long concluded that the diazepam was unrelated to the cause of the accident. Defendants seek, in essence, for the Court to declare that diazepam did not play a part in causing the collision based on the evidence, and then use that declaration to find the evidence irrelevant. Even if the Court concluded that Albright's use of diazepam did not play a role in the collision itself, the evidence is relevant to Plaintiffs' request to submit "aggravating circumstances" to the jury as permitted under Missouri's wrongful death statute. Taking diazepam on the day of the accident while operating a semi-truck is evidence of Albright's attitude toward public safety and is therefore relevant to the issue of "aggravating circumstances", even if something else ultimately caused the accident.

Therefore, testimony that Albright was "under the influence" of drugs is outside of Guntharp's expertise. Guntharp may testify as to whether Albright used prescription medications in violation of motor carrier safety regulations. (Guntharp Report, 4). Guntharp does not state that any one of Albright's medications directly caused the collision and Defendants remain free to introduce their own expert testimony that

9

prescription medication did not cause Albright's drowsiness or fatigue.

Defendants further argue that Guntharp may not testify that Albright was medically unqualified to drive. (Guntharp Report, 12). Guntharp bases his conclusion on Albright's medical history which showed that between 1997 and 1999, Albright had indications of coronary artery disease and in 2004 there existed a notation stating that Albright:

> "needs [a] DOT stress test." Nowhere in any [of Albright's medical records] is there anything that says that this coronary artery disease has been addressed or resolved. So, you know, until you get that from the doctor, until you get a statement from the doctor that says that the driver has no clinical diagnosis of coronary . . . arterial disease that can affect his driving, until that time this would take precedence." (Guntharp Dep., 240).

Guntharp's conclusion is based on his assessment of industry practices in preventing drivers with continuing cardiac impairments from driving. (Guntharp Dep., 240-41). This includes a motor carrier's obligation to contact Albright's physician when it learns that a driver has a history of cardiac disease or stroke. (Guntharp Report, 8).[7] Because Guntharp's proffered testimony as to Albright's medications and cardiac history are not medical in nature and relate to his testimony on industry practices, it will be permitted. Similarly, Guntharp may testify that Trucker's Plus failed to inform Pro Logistics that Albright logged 12 hours for a different motor carrier, White Oaks, as that testimony bears directly on Trucker's Plus practices for ensuring compliance with motor carrier

---

[7] Defendants also claim that Guntharp admitted that he was a "layman." (Guntharp Dep., 240). Guntharp clearly used the term "layman" in contrast to being a physician or other licensed medical professional. He clearly did not mean that he was not an expert on motor carrier safety regulations, industry practices or otherwise.

10

safety regulations.  In this case, there is a legal nexus between Trucker's Plus's safety practices and the Plaintiffs' injuries.  *See Group Health Plan, Inc. v. Philip Morris USA*, Inc., 344 F.3d 753, 761 (8th Cir. 2003).

Defendants next argue that Guntharp should not be permitted to opine that Trucker's Plus and Pro Logistics should have requested Albright's medical "long form" instead of simply relying on his medical certification card.  The Federal Motor Carrier Safety Regulations do not require Trucker's Plus to obtain Albright's "medical long form."  (Gunther Dep., 241).[8]  Guntharp's testimony states that once Trucker's Plus and Pro Logistics saw that Albright's physician, James Baldwin, M.D. ("Baldwin"), only qualified Albright for one year, instead of two, they should have requested his medical long form which in turn would have led to follow-up including why Albright listed no prescription medications.  (Guntharp Dep, 232).  Defendants argue that Baldwin submitted an affidavit stating that he would have qualified Albright even with knowledge of the medications.  (Baldwin Aff. ¶5).  Even if the Court accepted Defendants' arguments, it raises no issue of admissibility.  Whether or not Trucker's Plus and Pro Logistics exercised reasonable care in securing Albright's medical history is clearly a question for a jury.

The Court will reserve ruling on Defendants' request to preclude Guntharp's

---

[8] The medical "long form" is a Department of Transportation ("DOT") form used by the medical examiner in the driver qualification process.  If the driver passes the physical examination in which the long form is used, he or she is issued a medical certificate.  The Federal Motor Carrier Safety Regulations require only that motor carriers and drivers obtain and keep the medical certificate approved by a qualified health care professional.  See 49 C.F.R. § 391.43(g).

11

testimony that when an employer observes that a driver has only a one-year certification, it should perform a second evaluation by a company-retained physician. (Guntharp Dep., 139-141). Guntharp did not include this industry practice in his report. Under Fed. R. Civ. P. 37(c)(1), a party may not use information it failed to disclose requested by Rule 26(a) unless its failure to disclose is harmless. The Court will treat the issue as a Motion in Limine and will take it up at the pre-trial conference.

Defendants also argue that Guntharp should not be able to opine that fatigue caused the collision because his opinion is "based on the lay observation of others." (Doc. 483, 21). Guntharp's stated grounds for concluding that fatigue caused the collision include: Albright's log records showing inadequate sleep, available warnings, clear visibility and high contrast color of the yellow Mazda Protégé, the last car in line of slowing traffic. (Guntharp Dep., 21). Guntharp did not "base" his conclusion on other witnesses' testimony and the Court will not exclude Guntharp's conclusion that fatigue caused the collision. Guntharp simply noted that others' testimony was consistent with his stated factual bases for concluding that Albright was falling asleep at the wheel. The Court agrees with Defendants, however, that Guntharp may not testify that "Albright was operating under the influence of a prescribed drug" as that constitutes medical testimony outside Guntharp's established expertise (Guntharp Report, 11).

### C. Trucker's Plus Incentive Program

Trucker's Plus maintains an incentive program for its drivers which awards the top-revenue-producing driver in the company with a vacation so long as the driver has no

12

accidents and receives no traffic violations during the qualifying period. Trucker's Plus also recommends a 4-second following distance for its truckers which Guntharp indicated may not be a sufficient following distance. Guntharp opined that Trucker's Plus's incentive program encourages unsafe driving because it does not require drivers to comply with hours-of-service rules and logbook requirements of the FMCSR. (Guntharp Dep., 249). Guntharp concedes that Albright was not in contention for the award and Trucker's Plus's recommended following distance was not an issue affecting Albright's collision. The Court finds that while Guntharp's opinions as to the incentive program and the following distance are valid under Fed. R. Evid. 702, they must be excluded under Fed. R. Evid. 401 and 402.

## V. Conclusion

Accordingly, it is hereby

ORDERED that Defendants' Motion to Exclude Certain Testimony of Walter Guntharp [Docs. ## 466, 474, 481] is GRANTED in part and DENIED in part.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 11, 2008
Jefferson City, Missouri