IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JAMES GARRETT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 06-CV-4137-NKL |
| ) | (Consolidated with Case Nos. 06-CV- |
| GEORGE MARTIN ALBRIGHT, JR., et al.,) | 0785, 06-CV-4139, 06-CV-4209 and 06- |
| ) | CV-4237) |
| Defendants. ) | |

**ORDER**

This case involves four lawsuits that arose from a June 1, 2006, automotive accident on Interstate 70 in which four people died and others were injured.[1] The defendants are George Martin Albright, Jr.; Trucker's Plus HR, Inc. ("Trucker's Plus"); GLS LeasCo Corporation ("GLS Leasco"); Logistics Insight Corporation ("Logistics Insight"); CenTra, Inc. ("CenTra"); and Pro Logistics, Inc. ("Pro Logistics").

Pending before the Court is Plaintiffs' Motion to Strike the Testimony of Harry L. Sink, Ph.D. [Doc. # 487]. The Court denies Plaintiffs' motion.

**I.   Background**

On June 1, 2006, George Albright, Jr. ("Albright"), was driving the tractor-trailer that caused the accident that is the subject of this case. On that date, Albright was an employee of Trucker's Plus, which is a division of Resolve Staffing, and was working as a commercial

---

[1] On January 8, 2008, this Court dismissed Case No. 06-4237-CV-W-NKL, pursuant to Fed. R. Civ. P. 41(a)(2).

1

driver for Pro Logistics. Although Trucker's Plus considered Albright well-qualified, Albright had a history of cardiac deficiency, stroke, diabetes and glaucoma. (Fuston Dep., 45; Albright Dep., 108, 366, 407-08, 418). At the time he was hired and as of the day of the collision, Albright was taking ten (10) prescription medications, "almost all of which list drowsiness and loss of consciousness as a potential side effect . . . ." (Doc. 528, 28).[2] One theory of liability, that Trucker's Plus and Pro Logistics negligently hired Albright, depends in part on Plaintiffs establishing that there are general industry practices with regard to qualifying drivers which Pro Logistics and Trucker's Plus failed to adopt.[3] Defendant Trucker's Plus submits Harry L. Sink's ("Sink") testimony in relevant part to establish that there are no industry practices beyond the Federal Motor Carrier Regulations. Plaintiffs claim that Sink's testimony is unreliable and not admissible because (1) he is unqualified to testify about truck driver leasing companies and (2) his deposition testimony contradicts his expert report.

Trucker's Plus has the burden of establishing the admissibility of Sink's testimony. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). To be admissible, expert testimony must be both relevant to a material issue and reliable. *Margolies v. McCleary*,

---

[2]The statement is drawn from deposition testimony given by Charles Reskin, D.O. (Reskin Dep., 149-55). Reskin noted that for many of the medications, drowsiness or loss of consciousness is a listed side effect but not "common."

[3]Defendants' theory, on the other hand, suggests that there are no industry practices beyond the Federal Motor Carrier Safety Regulations. (Doc. 483, 9). For example, while Federal Motor Carrier Safety Regulations require that drivers reach 21 years of age, industry practice, due in part to insurance underwriting requirements, demands that drivers reach "23 or 24" years of age. (Guntharp Dep. 210-211).

2

Inc., 447 F.3d 1115, 1120 (8th Cir. 2006). Under Federal Rule of Evidence 702, if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Expert testimony may not be permitted where it is based upon speculation. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000).

## II.     Sink's Qualifications

Sink's educational qualifications include: a B.S. in Transportation, an M.B.A. with a concentration in Transportation and Logistics, and a Ph.D. in Business Administration with a concentration in Transportation and Logistics. He is an Associate Professor of Logistics and Transportation in the Department of Economics and Transportation/Logistics at North Carolina A&T State University. As a professor, he teaches courses in introduction to transportation, carrier management, analysis and design of transportation and logistics systems, statistics, elementary statistics and advanced statistics.

In addition, Sink has actually worked in the trucking industry. He drove a semi tractor-trailer for five years. He also worked at a trucking firm, where he was responsible for hiring and firing drivers, overseeing the leasing of equipment, ensuring proper maintenance, and "everything that goes along with fleet management." As part of this experience, Sink stated that he has experience with driver leasing companies and has worked

3

with lease drivers before, although he has not personally been employed by a driver leasing company.

Plaintiffs' main contention appears to be that they believe Sink is unqualified because he has not had any specific connection with driver leasing companies. However, from this litigation, it is clear that truck driver leasing companies are ubiquitous throughout the trucking industry.[4] Sink's educational and practical background will assist the trier of fact in determining how industry standards and practices may, or may not, affect truck driver leasing companies. To the extent Plaintiffs question Sink's knowledge of truck driver leasing companies, they may do so on cross-examination. *See Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990) ("Once the trial court has determined that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than its admissibility."). Sink is qualified as an expert by experience, knowledge and training.

## III. Reliability

Next, Plaintiffs argue that in his report, Sink relies on "industry practice" and "industry standard," but that in his deposition he states that he is not aware of any industry standard or practice. This discrepancy, Plaintiffs contend, make his testimony unreliable. Trucker's Plus responds that there is no conflict here: Sink meant that the only "industry standards" he knew of were the federal motor carrier rules and regulations, and that he did

---

[4]The parties seem to be debating whether leasing companies like Trucker's Plus are, in fact, part of the "trucking industry." However, whether or not they are actually "part" of the industry, it is without question that leasing companies are commonly involved or connected with the trucking industry.

4

not agree with Plaintiffs' contention that there were additional standards and practices above and beyond the federal rules and regulations. Plaintiffs counter that Sink's deposition testimony revealed that he did not believe that driver leasing companies were subject to the federal regulations, and therefore he only testified to the industry practices of motor carriers, not leasing companies.

Just because Sink does not believe that driving leasing companies are subject to the motor carrier regulations or he believes the motor carrier regulations are the only "industry practices" or "industry standards," does not constitute unreliability. That is, in fact, his testimony: that driver leasing companies are only subject to federal rules, if any, and that the motor carrier rules do not apply to leasing companies. To the extent that Sink's deposition testimony may be inconsistent with his expert report findings, Plaintiffs may question him at trial, on cross-examination, regarding his skill or knowledge, or the factual basis of his opinions; however, those questions go to weight, not admissibility, and are thus for the jury to decide. *See Fox*, 906 F.2d at 1256; *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988) (explaining factual basis of expert's testimony goes to credibility, not admissibility).

## IV.    Conclusion

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion to Strike the Testimony of Harry L. Sink, Ph.D., [Doc. # 487] is DENIED.

                                      s/ Nanette K. Laughrey
                                      NANETTE K. LAUGHREY
                                      United States District Judge

Dated: March 21, 2008
Jefferson City, Missouri