IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JAMES GARRETT et. al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:06-CV-4137-NKL |
| ) | |
| GEORGE MARTIN ALBRIGHT, JR., ) | |
| PRO LOGISTICS, INC. et al., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Logistics Insight Corporation's and Pro Logistics Inc.'s Motions to Vacate April 23, 2008 Jury Verdict [Doc.# 826]. The Court denies Defendants' motion.

**I.  Background**

Plaintiffs originally brought this action against Defendants George Albright, Jr. ("Albright"), CenTra, Inc., Central Transport, Inc. ("Central Transport"), GLS LeasCo, Logistics Insight Corporation ("Logistics Insight"), Logistics Services and Pro Logistics, Inc. ("Pro Logistics"), Trucker's Plus HR, Inc. ("Trucker's Plus"), and Resolve Staffing, Inc., to recover damages for personal injuries and wrongful death resulting from a semi-truck collision occurring on I-70 on June 1, 2006.[1]  At the time of the collision, Albright

---

[1] On March 6, 2008, the Court entered default judgment against Central Transport, Inc., and granted summary judgment to Logistics Services, Inc. (Docs. ## 567, 571). On March 11, 2006, the Court granted summary judgment to Resolve Staffing, Inc. (Doc. # 587). On March 29, 2008, the Court granted summary judgment to GLS LeasCo. (Doc. # 710).

was an employee of Trucker's Plus, driving a tractor-trailer unit owned by GLS LeasCo. On June 1, 2006, Albright drove under the DOT authority of Pro Logistics which had 1) leased Albright from Trucker's Plus; 2) leased the tractor-trailer unit from GLS LeasCo; and, 3) contracted with Central Transport to provide safety services including driver verification, logbook auditing and drug and alcohol testing. (Christ Dep., 17-19). Plaintiffs alleged that the collision was caused in part by Defendants' failure to hire, supervise and train safe drivers and/or safely monitor and service their motor carrier units.

The Court bifurcated the trial. In phase one, the jury considered liability for actual damages and aggravating circumstance as well as the amount of actual damages. In phase two, the jury was to consider the amount of damages for aggravating circumstances as well as alter ego liability against CenTra, Inc., the direct or indirect parent of Logistics Insight Corporation and Pro Logistics, Inc. At the conclusion of phase one, the jury returned a verdict of $15 million against Logistics Insight (62% fault), Pro Logistics (30% fault) and Trucker's Plus (8% fault).

Before the beginning of phase two of the trial, the Plaintiffs settled with all Defendants for $18 million. Logistics Insight and Pro Logistics now request the Court to vacate the jury's verdict.

## II. Discussion

There is no basis upon which this Court may grant Defendants' requested relief. Defendants concede that there is no final judgment in this case and that a motion to vacate a jury verdict must be brought under Fed. R. Civ. P. 60(b). (Doc. 826 ¶¶ 4, 9). Nor did

2

Defendants negotiate vacatur as a term of the settlement agreement.  (Doc. 847, 2-3).[2]
Defendants' cited authority is inapposite.[3]  In *United States v. Munsingwear*, the U.S. Supreme Court ruled that the removal of the price control on which the Government's action was based mooted the case.  340 U.S. 36.  This case is not "on its way" to an appellate court nor is it "pending a decision on the merits" as in *Munsingwear*.  The Eighth Circuit's decision in *Hendrickson v. HHS*, 774 F.2d 1355 (8th Cir. 1985), is too brief to ascertain any meaningful precedent, but certainly it can be read to mean that courts *may* vacate final judgments where the parties reach settlement.  *See also Nahrebeski v. Cincinnati Milacron Marketing Co*. 41 F.3d 1221 (8th Cir. 1994) (noting that a district court *may* consider a request for vacatur absent "extraordinary circumstances" which are necessary for an appellate court to remand with instructions to vacate).

Even were there a final judgment in this case, Defendants have offered no explanation why they did not include vacatur as a term of the settlement nor why vacatur would serve any other public or judicial interest.  The issue of whether a district court's final judgment should be set aside through vacatur due to a *post-judgment* settlement between the parties has been widely discussed in the jurisprudential and scholarly

---

[2] Defendants also argue that Plaintiffs waived their right to a jury trial as a condition of the settlement, although it is not clear whether that condition applies only to a determination under phase two of the trial.  (Settlement Agreement ¶ 12).

[3] Plaintiffs are correct that Mo. Rev. Stat. § 537.080 provides no support to Defendants' position.  That statute merely provides the trial court the discretion to review settlement terms and ensure that wrongful death victims are adequately compensated.

3

literature.  *See Evans v. Mullins*, 130 F. Supp. 2d 774, 775-76  (W.D.Va. 2001) (citing Jill E. Fisch, *Rewriting History: The Propriety of Eradicating Prior Decisional Law Through Settlement and Vacatur*, 76 Cornell L. Rev. 589 (1991); Michael W. Loudenslager, *Erasing the Law: The Implications of Settlements Conditioned Upon Vacatur or Reversal of Judgments*, 50 Wash. & Lee L. Rev. 1229 (1993)).  There is no uniformity among the appellate courts on the issue.  *See, e.g., Nestle Co. v. Chester's Market, Inc.*, 756 F.2d 280 (2d Cir. 1985) (vacating judgment after parties agreed to vacatur); *In re Mem'l Hosp., of Iowa County, Inc.*, 862 F.2d 1299 (7th Cir. 1988); *Nat'l Union Fire Ins. Co. v. Seafirst Corp.*, 891 F.2d 762 (9th Cir. 1989) (applying a case-by-case approach).  The Eighth Circuit's approach has vested district courts with significant discretion in vacating final judgments.  *Nahrebeski v. Cincinnati Milacron Market'g Co*. 41 F.3d 1221 (8th Cir. 1994).  In general, there is a presumption against vacatur.  *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000).  District court judgments "are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur."  *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26, 130 L. Ed. 2d 233, 115 S. Ct. 386 (1994) (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40, 126 L. Ed. 2d 396, 114 S. Ct. 425 (1993)).

Indeed, granting Defendants' motion would not only diminish the contribution of the members of the jury who spent a significant amount of their own time carefully listening to evidence and deliberating but also thwart the judicial policy encouraging

4

settlement. "[S]ome litigants, at least, may think it worthwhile to roll the dice rather than settle . . . if, but only if, an unfavorable outcome can be washed away by a settlement-related vacatur." *Evans v. Mullins*, 130 F. Supp. 2d 774, 775-76 (W.D.Va. 2001) (quoting *U.S. Bancorp Mortgage Co.*, 513 U.S. at 28). In other words, if post-judgment vacatur were a readily available option, parties would be less likely to settle at earlier stages of the controversy. *Id*. The parties reached settlement through a long and acrimonious process of which the jury's verdict after phase one of the trial was only one part. The fact that the parties have reached an agreement does not undermine the findings of the jury, and vacating their verdict for no reason other than an erroneous contention as to mootness is unjustified.

## III. Conclusion

Accordingly, it is hereby

ORDERED that

Defendants' Motion to Vacate April 23, 2008 Jury Verdict [Doc. # 826] is DENIED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 22, 2008
Jefferson City, Missouri